Good afternoon, Illinois appellate court. 1st district court is now in session. The 6th division, the honorable justice presiding case number 2, 4 dash 0704 people versus Tony more. Good afternoon, I'm justice, and you can see my colleagues with me, justice, Michael Hyman and justice Celia gameraft before we started, like, just to point out that we have all read the brief. The record and the case is cited, so we're very familiar with the facts and we just encourage people to start with their strongest argument and work down from there as time permits it. That may not be how your brief is arranged, but it's how oral argument is most efficient. I think you each get 15. 18 minutes, the appellate gets to save some time for rebuttal and we are. We'll try to give you some time without questions, but that doesn't always work. So, if the attorney for the appellate could please. Introduce him or herself. Good morning. Your honors. My name is Joseph of the office of the state appellate defender and I'm here on behalf of Tony more. Okay, thank you. And for the appellate the state. Good afternoon. Your honors name is Kimberly read on behalf of the people. If you could start place, this court should remand for further post conviction proceedings and the appointment of counsel, because Tony more has set forth a color will claim of actual innocence based on the affidavits of Sam tart. Now, I know your honors are familiar with the facts, but I think it's important to go over what tart says in his affidavit tart says that he was 14 years old at the time of the shooting. And that just prior to the shooting, he saw the victim Michael Robinson standing with a group of friends. He approached Robinson spoke with him and then walked away to go play basketball with some other friends. As he was walking away, he heard a gunshot and then turned around and saw a short, slim man who he did not recognize pointing a gun at Robinson. The man fired 4 more shots as Robinson tried to run away. And target bears that he got a quote good look at the man and that he is positive that the man is not Tony more. Now, originally told detectives, O'Brien and Halloran that more was the shooter or that more was not the shooter. But O'Brien put pressure on tart. He told him that Robinson's older brother had told him that more was the shooter and that they needed to help to put more away. He also told tart to lie and say that Robinson was by himself at the time of the shooting and tart who was young and afraid decided to go along with what O'Brien told him that he needed to do. He was also receiving pressure from Robinson's family. So, prior to his grand jury testimony, O'Brien continued to contact tart almost every single day to try to pressure him into identifying more as the shooter at the grand jury, which ultimately did. And he also identified more in a statement to the police. Ultimately, however, tart did not testify at trial because he was, as he said, afraid of O'Brien. He was young and afraid and he did not want to go against him. So, these allegations satisfy the requirements of a colorable claim of actual innocence. 1st, tart's affidavit is newly discovered. Evidence is newly discovered if it has been discovered since trial and could not have been discovered sooner through the exercise of due diligence. Why couldn't he have contact? He knew about tart. Correct he didn't know about tart, but what he knew at the time of trial was that tart had identified him target said that he was the shooter. So, he had no reason to suspect that tart would then recant that testimony and say, essentially, the complete opposite, which is what what he says in his affidavit. But counsel, wasn't there a statement that the trial counsel knew that was given to somebody else where said I didn't see his face. He did say he didn't see his face, but he did say that he identified more because he matched the body type of the shooter. So, his statement to the defense investigator, I think it just events some, maybe a small degree of uncertainty about whether more was the shooter. But he never said that more was not the shooter. He never recanted his identification of more as the shooter. And he never said that he was willing to testify that more was not the shooter. And those are all critical facts that are present in his affidavit that have never been. Put before a court or a trier of fact up until prior to tart submitting his affidavit. And how did tart's affidavit come to be? That's not entirely clear at this point from the record. We just know that charts get provided this affidavit in 2020. In which he stated that, you know, as I mentioned that he. Had been young and afraid and was was. Essentially unwilling to come forward with what he now says. Is what actually happened, which is that he saw the shooter and he got a good look at him and he's positive that it was not more. Because tart never testified at trial, how does this undermine trial testimony? That was presented. Reminds it because it's not as I think the state points out in its brief. This isn't an instance of him recanting any testimony that was presented at trial. But it is presenting new evidence that was not presented at trial, which is namely the fact that tart is willing to be another. Unbiased witness who would testify that more was not the shooter. That he is positive that more is not the shooter. So, I think that the fact that the state kind of seizes on the recantation aspect of it, but I think that that misconstrues the importance of his testimony in this case. Well, part of it is that he was a child then and he's an adult now. Yes, that's that is true. Your honor. He was 14 years old at the time and now he is grown up. And, you know, the factors that prevented him from coming forward with this information earlier are no longer present. He's no longer, you know, I think we can. Sorry. Also, I mean, it's it is, I think. Become clear that O'Brien and Halloran have are not they're not a policeman anymore. For one thing, he doesn't need to fear them anymore. Correct. Your honor. Correct. Yes, and so. Taking tarts newly discovered affidavit, and it is newly discovered because while the fact of more is innocence may have been known to him at the time of trial. The source of that being tarts affidavit and testimony was not. And now the state cites 2 cases, Barnes later and Jared for essentially the exact opposite proposition, which is that it's the facts that must be newly discovered. But those cases have been pretty roundly rejected by a number of appellate court decisions. In recent years, post Edwards, the Illinois Supreme Court decision. And even Barnes later, which I believe is, as I said, no longer good law. Recognize that there's an exception for recanted testimony where the defendant knew that the witness was was essentially not telling the truth at trial. And so, yes, so I think that the critical point here is that no amount of due diligence on more as part could have placed this affidavit before this court until 2020, which is when he provided the affidavit, which is when Tartt provided the affidavit as discussed all know all more new at the time of trial was that Tartt had identified him and all he later learned from the investigators report was that, you know, maybe Tartt had waffled on that a little bit, but not that he had ever recanted his identification in any way. And so you described it and you said this provides yet another witness who says it was not Mr. Moore. So by using that phraseology itself, the state's arguing that's cumulative. You're saying it's yet another layer. It's another witness. The jury already heard from witnesses who said it was not him. How do you respond to that? Well, I first I would say that the state does not cite any case law in support of that argument that an additional witness testifying that, you know, a defendant is not the shooter. In addition to the witnesses who already testified to that makes that that new witnesses testimony cumulative. That's an unsupported argument. And it ignores the basic principle here that evidence that speaks directly to the ultimate issue in a case, which is in this case, the identity of the shooter, cannot reasonably be considered cumulative. I think it would also point worth pointing out that it would create an odd situation where the closer the evidence is at trial, the harder it would be for a defendant to prevail on an actual innocence claim, which is directly contrary to the purpose of the actual innocence process, which is premised on the idea that it is offensive to due process to keep somebody who is demonstrably innocent in prison. So I think here, the state's kind of trying to take the closeness of the evidence and turn it against more. And they're doing so based on without citing any case law that that this court should should follow that argument. As I understand it, all of the evidence was circumstantial. Witnesses who say that it was more. Correct. He was convicted solely on the basis of the eyewitness testimony. There was no real physical evidence or even even real circumstantial evidence tying tying more to the shooting. What about it? Was there any evidence put in as to why more would have done this? No, nobody testified to anything to motive or any anything of that nature. I don't believe that this was ever reported as a robbery or a drug deal gone bad or there was no evidence to as to any of that. But it was interesting that the judge said that evidence was overwhelming. And then she spoke about the three witnesses who identified more, but really didn't pay much attention to the six witnesses who didn't did not identify more. I thought that was a very unusual kind of discussion about the judge. I agree that I think the judge's analysis in dismissing his or denying him leave to file was was cursory and did not take a full view of the facts. There are things about this case that are unusual. It's not common to have a case in which you have nine witnesses and three testifying to one thing and six testifying to something else. If that's not the definition of a of a closely balanced case, I don't I frankly don't know what is. So I would agree, Your Honor, that the court didn't take fully into consideration the defense evidence that was presented or even some of the some of the issues with the state's own witnesses as well. But there was a lot of contradictory information in the three witnesses that identified him. Correct, Your Honor. Cindy Smith Richardson testified that there weren't many people outside, which was contradicted by the testimony of her own son, who said that he was outside with four other people playing basketball. He testified at trial, Dwight Neal. It also seems unlikely. This was July 29th, the middle of the summer in Chicago. The streets are usually packed with people. And indeed, all six witnesses testified that there were a number of people outside at the time of the shooting. They were all consistent in that respect. So I think that that leads into the the conclusive character of this evidence. You know, the defendant's new evidence in this TARTS affidavit only needs to be sufficient to create a probability, not a certainty, that the result would be different on retrial. And critically, at this stage of the proceedings, this court is required to take TARTS allegations as true, because they're not rebutted by the record. I mean, as we've discussed, several witnesses said that Moore was the shooter, but the Illinois Supreme Court has held that a conflict with the trial evidence is not the same thing as finding that the new evidence is rebutted by the record. Evidence is rebutted by the record only when it is false or impossible. And here, the TARTS affidavit is by no means false or impossible. His statement that Moore was not the shooter is consistent with the other six test witnesses. And his allegations regarding O'Brien in light of the well-documented allegations against them are similarly not false or impossible. They are not. There's nothing in the record that would rebut TARTS allegations with respect to the detectives. And even addressing the, you know, we've talked a little bit about the strength of the defense case and the weaknesses in the state's case, but even setting that aside, the state hasn't offered a convincing explanation as to how testimony from a witness like TART who, you know, an unbiased witness who would say that he is positive that Moore is not the shooter um, the state has not offered a convincing explanation as how that would not probably change the result on retrial. They do mention that it would, you know, he's merely recanting his grand jury testimony. I've addressed that argument. And they also say that his description of the shooter is vague. But again, I think it misconstrues the importance of TARTS affidavit here. He's not saying that he knows who the shooter is. He freely admits that he does not know who the shooter is, but he knows that it's not Moore. And that's the critical fact here. And despite the state's best efforts, I don't think that they've succeeded in trying to undersell the importance of this testimony. And regardless, whether there's an element of putting the cart before the horse here too, whether TART has more to add to his description or whether, you know, he has more to say about the circumstances of the shooting are more, that's a question that's more appropriate for a third stage hearing, not at the first stage where credibility determinations are improper and Moore only has to set forth a probability that the outcome would be different. And again, TARTS testimony is significant, not just for what he says about Moore, but for what he says about O'Brien and Halloran as well. These allegations do call into question the integrity of the state's investigation. They bring to light the fact that they were putting pressure on him and that they told him to lie specifically about whether Robinson was by himself at the time. And they did so because then TARTS testimony would match the other state's witnesses who all said that there was, you know, nobody outside at the time of the shooting. So... Uh, Moore stepped off the sidewalk, if I'm not mistaken, or he stepped onto the sidewalk as one or the other. Is that something that's, how does that play into all this? That Moore stepped off of the sidewalk? Yeah, I think that was the, that's the, um, he said, and it was a couple of times in the, in the briefs about the sidewalk and stepping aside. I'm afraid I don't see that part in his grand jury testimony, but I can review it and... No, that's okay. That's okay. It's not a, it's not a major thing. Um, uh, let's see. It was, um, oh, yeah, here it is. Um, TARTS stated that the offender was initially on the pathway, but stepped onto the sidewalk. Start TARTS stated that the offender fired three or four shots at the victim and that the offender then went east across Maplewood. Um, well, that was specific, something he specifically testified to. That is true, your honor. Um, and based on TARTS affidavit though, I think that there's, uh, his affidavit does give, um, certainly rise to the possibility that this was information that was, was fed to him by O'Brien and Halloran who were, you know, who he had told Moore was not the shooter and who continued to pressure him to, to change that story in order to get him to say what they wanted him to say and to match his testimony to the state's other witnesses. Um, and to the extent that there are, um, discrepancies or inconsistencies there, that would again be something I think the state could explore at a third stage evidentiary hearing where TARTS would be able to testify and they could ask him further questions about, about those statements. Um, but if your honors don't have any further questions, um, Moore submits that this court should find that TARTS affidavit is newly discovered material and would probably change the result on retrial. And he asked this court to reverse the circuit court's order denying leave to file, um, and remand for further post-conviction proceedings and the appointment of counsel. Okay. It was my fault. I didn't ask you if you wanted to save some time to, uh, rebut, but you haven't used up a whole lot of time. So at the end of the state's case, we'll give you an extra three or four minutes. Okay. Okay. Thank you, your honor. Great. Ms. Rafe. Uh, again, good afternoon, your honor. May it please the court. Uh, we asked this court to affirm the decision below where a defendant failed to make a colorable claim of actual innocence. Um, I'm going to start with the most important factor of actual innocence is that TARTS affidavit is not so conclusive as to change the result at a retrial. Uh, he did not testify at trial, so he's not recanting a trial testimony. He's recanting. That's not the, that's not part of the factor. The court courts haven't considered that, uh, the fact that he didn't testify. The people, what, what is said here, and I'll repeat the question that counsel said that you haven't responded to adequately was that how could it possibly not be relevant, um, uh, in effect, a retrial that Moore says he is positive. It was not, excuse me, TARTS said it was positive. It was not Moore. And he says, what happened with regard to all the testimony he did make before the grand jury, when you hear all that, why wouldn't that, at least at this age, allow the case to move forward? I think that goes into the fact too, that when looking at this for at least this area, that his compared to his grand jury testimony, compared to even some of the statements that he made in the defense investigators report, um, his statements here in his affidavit are vague. They don't set forth any details of the shooting. He provided a generic description of some shooter. Well, that's not the point. The point, the point isn't a generic description shooter. He, he doesn't know who the shooter was. That that's what he says. And apparently he didn't have a good look. It's what he's saying now. And he's positive. It was not Moore. That's what's important. And when you look at Harris, how do you get around Harris? I mean, you also have to consider that he still, Tartt still needed to provide some detail of the shooting to actually make his affidavit. Like what do you mean? It wasn't a shooting. We know the shooting happened. We know he was there. He was, he says he was pressured by two tainted police officers that we know are tainted. You agree they're tainted? There is evidence that they're cases. Yes. Yes. Two tainted police officers were involved in this and he says they pressured him to lie and he told them the truth and that wasn't what they wanted. And they did all those things that we've heard about. So isn't that relevant when a person not related to Moore, independent witness comes out and says, I was positive, but I was scared. And they scared me. And I told him the truth, but they told me they kept going back at me and back. And he's 14 years old. That seems to be more relevant to his grand jury testimony. And then in addition, like, yes, he's now saying that he was scared, but he's also attesting that the detectives bothered him up until grand jury. There's nothing about if they still bothered him after grand jury to where he would make these statements to the defense investigator that, oh, maybe I didn't see his face. I just identified based on build. So that. I'm not quite sure I understand. He did what they wanted him to at the grand jury. Potentially at the grand jury, if this is the case of, if we're taking these statements as true. Yes. Yeah. And now he says that he's positive. And that's why he's coming for it. He's positive. It wasn't more. And you agree that more did not know of this, of tarts saying he was positive. It wasn't him until 2020 when he obtained the affidavit. He may or may not have known that. I would say that. Well, is there any evidence he knew? I mean, I didn't see anything in the record. When we're looking at the record, we can see that defendant knew who Tart was at trial. Tart's name came up multiple times throughout trial. A defendant knew that there was this investigation report that was done by defense counsel. When defendant finally gets his hands on that report and he reads that report based on what he put in his prior petition is that based on that report, Tart would have not identified him as the shooter. Now he files an appeal on that petition for the previous one, withdraws that appeal and then file subsequently with now this affidavit to support. So maybe he was premature in filing that prior petition, but there was an inkling that he had throughout all of this that Tart would not have identified him as the shooter. And that is his due diligence. No, no. He didn't know. He did not know that Tart said he is positive. It wasn't more. That was never stated any other time beforehand. And that is material, isn't it? Isn't that material to this case identification? I mean, the fact that this case relies on identification, but you're also then looking at how many other witnesses that he has already put forth that has said he's not the shooter, you have the witness. We have three and six. So if you're going to touch, go numbers wise, you know, there's more that said the other way, but for whatever reason, that's not what the you don't, I don't, I mean, what case says that, that it's not relevant here, that we shouldn't go to the, what case, what is your major case as to why you should be affirmed? Now, there's one case. Is there one case that says, yes, this is it. I don't have an exact case that is completely, completely on point. I'm not saying completely, completely, but they have Harris, they have Edwards, they have other cases. You have a lot of, as he stated, there's a lot of assertions you make without any case support. So that's why I'm asking, just tell me a case that you say, you know, this is the case on which we believe affirmance is appropriate. If it's two cases, tell me two. I think one of the cases that would be strong here is, I'm reading here, People v. Collins, which was from this court, and they found that the affidavit that was given by this new witness failed to set forth any details of the crime. And the affidavit- You know how long that affidavit was? The nine gesture. You know, is it the three line, right? Isn't that the one with the three lines? There was no detail, it was vague. Right, right. It was a three-liner. This is not a three-liner. I mean, you say this, that's your best case. Well, when we're looking at his supposed positive identification, now that somebody else was the shooter, that was a quick thing. He did not detail any information- He didn't say, he didn't know who the shooter was. He just says, all I know is it wasn't Moore. That's what's at trial. Was it Moore or wasn't it Moore? And he gave no other details of the shooting occurring. He didn't say whether- He said three or four shots. He called Thompson or Dawson or anybody there. What? I don't understand. In the affidavit, it's very specific as to the way he came forward, what he knew at the time, what went on. Well, if he was so afraid to come forward back then, then why was he okay with speaking with the defense investigator after a grand jury when he says that the detectives bothered him up until the grand jury proceedings? He didn't say anything about after- Credibility isn't at stake right now. And something else will happen later on. We'll find out. I mean, he was very young and his mother was involved at every stage of this. I'm sure she was concerned about her family. I mean, this, apparently this area, I mean, it was a area where you have to watch out for yourself because apparently there were phone calls to the mother from somebody. We don't know who, but it was in the record, right? Phone calls. Okay. Phone calls to the mother that were then followed up by defendant's wife saying, let me talk to Tartt. Let me talk to your son. Let me do that. But we don't know if there was Tartt's wife. Those are not, it doesn't say you're putting those two together, but that doesn't mean there were threats made. I don't think, I didn't see in the record. Are you saying in the record it says that Moore's wife made threats to the mother? It's not specific of if Tartt's mother believed the threats were coming directly from defendant's wife, but it was coincidental that would receive these unknown phone calls threatening, and then defendant's wife would follow up immediately following them is what was in her statement. I don't, we don't know, but that's all speculation on your part. So, I mean, we can't, again, that's not here nor there now. Right. And again. So, you have no other case but Collins that we should consider? I mean, the cases that we've cited throughout our brief do support. I just can't pull one out off the top of my head right this second. Okay. Thank you. But I mean, regardless, his statement is not so conclusive. There's, the jury has already presented with other witnesses of this other person being the shooter. You have, yes, the three witnesses that, while their testimony was attacked by defense counsel at trial, and they had, you know, differences in their testimony, they still all consistently identified defendant as the shooter, whether it was in court or not. But aren't we arguing the trial testimony rather than evaluating the new evidence? Aren't we supposed to look at the new evidence, not the trial testimony? Correct, but when finding if the addition of the chart's affidavit would make that conclusive to change the result of what's already presented? Not conclusive. No. Nobody says conclusive. It's a possibility of changing the result. Yeah, and we're saying here that it's not so conclusive as to likely change the results. Not so conclusive, saying that he posited that it wasn't more? That's not conclusive? No, it's the very similar testimony to what Thompson and Tony Dawson. He says that they made him, you know, they told him to lie, that he told them the truth. It's more than that, and we're talking about somebody who has continually stated from the testimony he gave at trial that he was innocent. Isn't this the type of case that at least you go and proceed to second stage? No, because the evidence is not conclusive. What evidence? We don't look at the evidence. We look at the new evidence. We look at the new evidence. Correct, and it's looking at the new evidence as it goes along with all the other evidence. So you're looking at everything in total. We're looking at everything in total. All he's doing is presenting another version of the same events, yes, but you already have the jury that has considered this information. So that leads into that this is not being newly discovered, or sorry, my apologies, that this is more cumulative because the... So when would a recantation ever be relevant? I mean, the way you say it, if the jury convicts somebody, then that's it. It doesn't matter what happens later on, if some witness or somebody before a grand jury says they were pressured to do things, that doesn't mean anything, right? Is that what you're saying? Well, his recantation would be more relevant if he had testified at trial. It's still relevant. You say it's not relevant because he went to the grand jury and he wasn't called? What case says that? I didn't see that in your argument. I have not found a case of whether a grand jury recantation... You're not arguing that. You're not arguing that. I'm just arguing that it's immaterial and cumulative because the jury has already considered other alibis, other descriptions of a shooter and has already considered evidence that is like that. That is always going to be true in a case like this, isn't it? No. No? Why? Is it going to be a conviction? There's already plenty of cases that are slightly different that have different issues, like the Ortiz case where you didn't have another witness that had testified at trial to be like, hey, yeah, I did not see this. He was not there. Somebody else did it. That's not the case. We have witnesses that already testified at trial that the defendant wasn't the shooter. And then we have the witnesses that testified that the defendant was the shooter and the jury weighed those and decided. And then adding in Tartt's affidavit, that's just another account of Thompson's and Dawson's testimony is not going to be so conclusive as to likely change the results. It's just cumulative in that regard. And then it's not newly discovered because with due diligence, he could have discovered this earlier because he knew Tartt was a witness that could have been called to testify. He knew who Tartt was. He knew at trial that this investigative report existed. And when he read this investigative report, his reading of the report, which is important to consider, is that Tartt would not have identified him as the shooter. So that alerted him to reach out to Tartt. That's not the argument that was raised just a few moments ago by your opponent, right? Of course, he's going to have the opposite argument. Well, but isn't that the better argument here? I mean, again, we're looking at the new evidence and there was no possibility of him knowing what happened with Tartt until 2020. That's what he argued. Well, that's when he finally got an affidavit from Tartt, but that does not mean that with his due diligence of knowing this other information, he could not have reached out to Tartt sooner. And he doesn't explain that. How do you explain that? I mean, they put that in the brief. It's, you know, when somebody's incarcerated, what's he supposed to do? He still couldn't show due diligence. Every day? Is that what, are you saying that it's okay for a defendant to begin harassing by sending letters and calls to any witnesses in case they might recant? Is that okay? Is that what you want? Is that what you're suggesting? No, absolutely not. But he still could have done something earlier to find out. What could he have done? He didn't know any of this. Well, according to the reports, according to portions of the record, defendant's wife knew Tartt's mother. So he could have contacted his wife to reach out to the mother to try to find Tartt to do any of this. How many times is he supposed to do that? Why should he have to do that? Well, he didn't know that. You can make up a lot of different scenarios. But again, this, we don't know. It's not in the record how this materialized. That question was asked by Justice Gamreth. Do you have an answer to that? Is there something in the record? That is something that defendant should have addressed in his affidavit. And he doesn't. He only claims that he did not know Tartt and he did not know the information he was going to provide. He did know Tartt. So yes, while he did not know that he was going to provide this exact information, he had an inkling that Tartt would have said that he was not the shooter. Why did he have an inkling? Tell me. Based on reading the report that was done by the defense investigator prior to trial, and as defendant has argued in his second successive post-conviction, he said that that was newly discovered evidence because based on his reading of what Tartt said there in the report, Tartt would not have identified him as the shooter. That's different than saying that I am positive Moore was not the shooter, isn't it? But that would have alerted defendant. My question, no, my question is, is that different, materially different? It's materially different in what words were used, yes, but still it comes down to that would have alerted defendant to then work to seek out Tartt and get something from him and not harass him, but reach out to him in some way, whether that is something that he could have done from jail or whether it's something that he could have done through his wife and his wife's family to reach out to Tartt's mother or what have you. That is the due diligence that he could have used and he did not based on information that he had at trial. Overall, in conclusion of the accumulation of all of this, just leads to that he did not make a colorful claim of actual innocence. So for those reasons and those stated in our brief, we ask the court to affirm the decision below. Any other questions of Ms. Reeve? Thank you, Ms. Reeve, we appreciate it. Mr. Bennett? Yes, Your Honor. Opposing counsel spoke a lot about how Moore had filed this second, this other successive PC based on the investigator's report and she repeatedly said that Moore interpreted this, what Tartt says in the affidavit or in that investigator's report as supporting a claim of actual innocence. But Moore was wrong about that. Tartt did not recant his affidavit or his grand jury testimony or his statement in that investigator's report. And also critically, there is nothing in that investigator report that as Justice Hyman has pointed out about Tartt saying that he was positive or that he would even testify at trial. All of that stuff was not included in his affidavit. So the fact that Moore had previously raised an actual innocence claim based on his defense investigator's report does not show that this new affidavit where Tartt sets forth a host of new information is not newly discovered. And in regard to what he says in the affidavit, the state says that his description of the man, which is consistent with all of the defense witnesses description of the shooter, and it's also consistent with one of the state's witnesses, LaWanda Sellers, who says that the shooter was 5'6 or 5'8", which is considerably shorter than Moore. In regard to the lack of detail in the affidavit, I would strongly disagree with that. The affidavit goes through a step-by-step account of what happened with the shooting. Tartt says what he was doing before the shooting, how he went up to Robinson, talked to him, asked him for a dollar to go buy candy or junk food at the corner store. Robinson said, hey, I don't have a dollar. So Tartt says he's going to go play basketball instead. Then when he's walking away, he hears a gunshot. He sees the short, slim man. The man is shooting at Robinson as he tries to run away. Tartt takes off running. This is, I mean, he takes you from the beginning or before the shooting, through the shooting, after the shooting. So to act like this is, in Collins, which the state references, the affidavit in Collins did not even specify what crime had occurred. Tartt's affidavit is so much more detailed than that. There's really no comparison between them. And the state, I think, brought up the fact that Moore says that he knew Tartt. I think it's important to remember here, Tartt was 14 at this time. Moore was 36. It is not as if they were good friends or buddies or anything. I think at most, the record establishes that Moore knew him as the little kid of one of his wife's friends. It's, I think, unreasonable for the state to suggest that they had some sort of close relationship that would have allowed Moore to obtain this affidavit earlier when he was in prison. And I did just want to address the alleged threats that are contained in a police report that was never brought out at trial. Yeah, I get these threats were never presented at trial. And as far as I can tell, they're double hearsay. So their reliability is very much in question and has never been tested at any stage of proceedings and should not be tested or considered now at the first stage of post-conviction proceedings. If the state would like to bring them out at the evidentiary hearing later on or on retrial, they're certainly free to do so. But I think to rely on them now to try to subverting the post-conviction act and the actual innocence process and is directly contrary to a line of authority, which Moore has cited in his brief. So I have no further points. I just reiterate that I believe this court should reverse the denial of leave to file and remand for further post-conviction proceedings if your honors have no further questions. Questions? On that case, we'd like to thank Mr. Pernick and Ms. Rae for your excellent briefs and your excellent oral argument. We will take this case under consideration and get an order and opinion out as quickly as possible. In the meantime, this court is adjourned. Thank you. Thank you, your honors.